## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JS MARKETING AND**                              Case No. **05-65426-7**
**COMMUNICATIONS, INC., dba Internet**
**Connect Services, Inc.,**

Debtor.

## *MEMORANDUM   OF   DECISION*

At Butte in said District this 24th day of January, 2008.

In this Chapter 7 case, after due notice hearing was held at Missoula on January 10, 2008,

on the Request for Payment of Administrative Expenses filed by Jeff M. Smith (hereinafter

"Smith") and JS Tower Management Services, Inc. ("JS Tower") on October 19, 2007 (Docket

No. 263) ("Request"), asking for $67,392.73 in building rent as an administrative expense for the

period from December 2005 through October 2006 under a written lease.  The Trustee filed an

objection and was represented at the hearing by attorney Harold V. Dye ("Dye") of Missoula,

Montana.  Smith and JS Tower were represented by attorney Edward A. Murphy ("Murphy") of

Missoula, Montana.  Smith testified in support of his and JS Tower's Request.  Smith's Exhibits

1

("Ex.") A and B, and the Trustee's Ex. A,[1] B, C, D, and E, all were admitted into evidence. In addition the Court granted the Trustee's request for judicial notice (Docket No. 278). After the conclusion of the parties' cases-in-chief the Court took the matter under advisement. After review of the record and applicable law, and for the reasons set forth below, the Request for Payment of Administrative Expenses filed by Smith and JS Tower will be denied by separate Order.

This Court has jurisdiction over this Chapter 7 case under 28 U.S.C. § 1334(a). The Request for Payment of Administrative Expenses filed by Smith and JS Tower is a core proceeding under 28 U.S.C. § 157(b)(2).

Smith and JS Tower request $67,392.11,[2] including late fees and interest, for post-petition rent incurred by the Debtor in premises owned by JS Tower under the terms of an expired written lease of business premises, Smith's and JS Tower's Ex. A, which the Debtor continued to use and occupy post-petition and which Smith and JS Tower contend thereby "was clearly for the benefit of the estate and the creditors thereto." The Trustee objects to the Request on the grounds that Smith received transfers from the Debtor which are recoverable under 11 U.S.C. §§ 502(d), 547 and 548, that Smith is a controlling shareholder of the Debtor and an insider who made the decision not to pay the rent, that Smith and JS Tower voluntarily subordinated their claims under a prior confirmed Chapter 11 plan involving the Debtor but did not abide by the subordination

---

[1]The Court admitted Trustee's Ex. A, but clarified that the $302,359.10 total amount stated on the last page of the exhibit and described thereon as "Due from Jeff Smith" is not correct.

[2]$67,392.11 is the amount set forth in the Request. Smith's and JS Tower's Ex. B states the total amount due as $67,392.73.

provisions of the confirmed plan, and that the lease expired prepetition and was not renewed. The Trustee asks that Smith's and JS Tower's Request be denied until Smith provides a complete accounting of all transfers to him or for his benefit since December 20, 2002.

## FACTS

Without objection, the Court granted the Trustee's request and took judicial notice of the following:

1. That on November 15, 2001, Internet Connect Services filed a Chapter 11 bankruptcy petition in this Court as Case No. 01-33439-11.

2. That on December 14, 2001, JS Marketing and Communications, Inc. ("JS Marketing"), filed a Chapter 11 bankruptcy petition in this Court as Case No. 01-33732-11.

3. That on March 25, 2002, the two cases were substantively consolidated. Case No. 01-33732-11 was designated the lead case.

4. The contents of the consolidated Chapter 11 plan filed October 9, 2002, in the above cases.

5. The Order entered December 20, 2002, confirming the foregoing plan.

6. Proofs of Claim Nos. 26, 28, 29, and 31 filed in the instant case and attachments thereto.

The plan filed in Case No. 01-33732-11 classified Smith and JS Tower's secured and unsecured claims separately in Class 6, and in Article III Class 6 claims were voluntarily subordinated to all other claims to be paid once other claims were paid in full. Smith testified that he was majority shareholder in both JS Marketing and Internet Connect Services at the time of the 2001 bankruptcy filings, and also a major creditor of both, which he described as "highly

3

leveraged" and which owed him personally several million dollars.

The order confirming the plan in Case No. 01-33732-11 noted that all the plan was feasible and was sufficiently funded to pay creditors, and that allowed claims were to be paid in full under the plan. However, Smith testified that none of the debt from the consolidated Case No. 01-33732-11 was discharged in that case.

The instant case commenced on November 29, 2005, with the filing of a Chapter 11 petition signed by Mark Mesenko, as president of the Debtor corporation, JS Marketing, and by Dye as Debtor's attorney. Smith testified that he was a majority shareholder and an officer of JS Marketing as well as a creditor.

Smith testified that he took money out of JS Marketing which he treated as loan repayments, and that JS Marketing paid his personal credit card bills, legal fees and association dues. Smith explained that he used his personal credit card for JS Marketing's business expenses, and that he loaned JS Marketing money with the understanding that it would repay him. He testified that JS Marketing paid some of his personal obligations within a year prior to the date of the filing of the instant petition. Trustee's Ex. A, B, C, D and E reflect some payments by JS Marketing or Internet Connect Services for Smith's bills, amounts applied to Smith's notes, and reimbursements.

Smith testified that he owned a building leased to JS Marketing which it occupied under a written lease[3], Smith's Ex. A, which was signed by Smith as president for both the Lessor JS

---

[3]There is a discrepancy in the description of the leased premises. The Debtor JS Marketing's address of record is 2700 Radio Way in Missoula, and Smith testified that the leased building is located at 2700 Radio Way. However, the lease, Smith's and JS Tower's Ex. A, states the address of the building and land subject to the lease as 2700 North Reserve Street.

Tower and the Lessee JS Marketing.  Under cross examination Smith admitted that the lease term expired prepetition, under Section 2 of the lease, on November 17, 2004, and that no written notice was given by either lessor or lessee to extend the lease as required therein.  But he testified that the Debtor continued to reside in the leased premises and continued to pay rent after November 17, 2004.  The pending Request states that no motion to reject the lease was filed in this case.  Furthermore, no motion to assume the lease was filed.

Smith testified that 1 or 2 months lease payments may have been paid after the petition date, but that then lease payments effectively stopped.  Smith's and JS Tower's Ex. B sets forth their allegations of unpaid rent, late fees, and interest accrued under Smith's and JS Tower's Ex. A from December 2005 through October 2006, totaling $67,392.73.  Smith's and JS Tower's Ex. B does not credit the Debtor with the 1 or 2 post-petition lease payments which Smith testified may have been paid, and Smith later testified that he was not paid rent under the lease from December 2005 through October 2006 and that Ex. B is correct.  Smith was asked on cross examination whether the Debtor's records would be correct regarding payments on his notes, and he answered that some postings of payments to him were incorrectly posted in the ledger and are actually loans by Smith to the Debtor.

Proof of Claim No. 26 was filed April 11, 2006, by JS Tower, signed by Smith as owner, asserting an unsecured nonpriority claim in the amount of $265,000, with the building lease for 2700 N. Reserve St. attached, dated November 17, 1999[4], and signed by Smith as both president of the lessor JS Tower and president of the lessee JS Marketing.  Also attached is the sublease

---

[4]The lease attached to Claim No. 26 appears to be the same lease as Smith's and JS Tower's Ex. A.

between JS Marketing and Internet Connect Services for the same property, dated May 1, 2000, and Smith signed the sublease as president of both lessor and lessee.

Proof of Claim No. 28, filed April 11, 2006, is signed by Smith as creditor with a total claim of $540,000.00, including a $40,000 secured claim and a $285,000.00 priority claim.[5] Attached to Claim 28 is a written lease naming Smith as lessor and JS Marketing as lessee, dated January 13, 1998, signed by Smith personally as lessor and as president of the lessee.  The property description in that lease is different from the property description in Smith's and JS Tower's Ex. A, and the lease term expired on January 15, 2003.  No evidence was presented that this lease was renewed or held over.

Proof of Claim No. 29 was filed by Smith on April 11, 2006, asserting a secured claim in the amount of $212,312.70, accompanied by attachments including promissory notes dated January 1, 1995, and two promissory notes dated May 2, 2003 (to Internet Connect Services). No security documents are attached to Claim No. 29, which states that it is secured by "FF&E."

Smith filed Proof of Claim No. 31 on April 11, 2006, asserting a secured claim in the amount of $6,846,150.23, secured by FF&E.  Attached to Claim No. 31 are copies of Seven-Year Convertible Debentures issued by JS Marketing due January 1, 2005, and December 31, 2005, a security agreement between JS Marketing, Smith and JS Marketing's wholly owned subsidiaries[6] dated December 6, 2006, and UCC-1 financing statements.  No objections to Smith's or JS Tower's Proofs of Claim have been filed.

---

[5]The priority claim is not specified by checking the appropriate box on the claim form.

[6]Smith signed the security Agreement on behalf of each of the parties thereto.

6

No Chapter 11 Plan was ever filed in the instant case[7] and no plan was confirmed. According to the instant Request, the leased premises were sold at foreclosure sale on October 26, 2006.

The Debtor filed a motion to establish sale and overbidding procedures on November 22, 2006 (Docket No. 109) for a sale of all Debtor's assets to T.O.F., LLC ("T.O.F."), filed a motion for sale of the Debtor's assets to T.O.F. on December 1, 2006 (Docket No. 115), and filed a motion to convert "with delayed effective date" on December 14, 2006 (Docket No. 131). Sale and overbidding procedures were established, and Blackfoot Communications, Inc., was the successful bidder of the Debtor's assets by Order entered December 21, 2006 (Docket No. 140). The asset purchase agreement was approved as modified on March 13, 2007. The Debtor's motion to convert the case to Chapter 7 with delayed effective date was granted by Order entered on June 7, 2007 (Docket No. 214). Torgenrud was appointed as Chapter 7 Trustee, and filed an application to employ Dye as special counsel on July 26, 2007.

Smith and JS Tower filed their Request for payment on November 1, 2007, and the Request was heard on January 10, 2008, after the Trustee objected.

## DISCUSSION

Smith's and JS Tower's Request cites no statute, case law or other authority upon which they base their Request for payment of rent as an administrative expense. Because their Request is based on a lease which they contend was renewed, several Bankruptcy Code sections are

---

[7]A liquidating plan was suggested as a possibility by the Debtor's then-attorney Dye in Docket No. 62. In Debtor's response to the U.S. Trustee's second motion to convert, Docket No. 81, Dye stated: "Debtor has made is [sic] completely clear to all parties including the UST from the inception of this case that this would be a liquidating case."

involved.

Section 503(a)(1)(A) allows administrative expenses for actual and necessary costs and expenses of preserving the estate.  11 U.S.C. § 503(b)(1)(A).  The purpose of administrative expense priority is "to include the larger objective . . . of operating the debtor's business with a view to rehabilitating it."  *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071-72 (9th Cir. 1998), quoting *Reading Co. v. Brown*, 391 U.S. 471, 475, 88 S.Ct. 1759, 1762 L.Ed. 2d 751 (1968); *In re Overland Express, LLP*, 20 Mont. B.R. 149, 153 (Bankr. D. Mont. 2002).  In order "[t]o limit the administrative expense priority to those situations where the purpose of rehabilitation will be served," the Ninth Circuit has held that the burden of proving an administrative expense claim is on the claimant and that the claimant must show that the debt asserted to be an administrative expense

> (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and

> (2) directly and substantially benefitted the estate.

*Megafoods Stores*, 163 F.3d at 1071-72; *Overland Express*, 20 Mont. B.R. at 153; *In re DAK Indus., Inc.,* 66 F.3d 1091, 1094 (9th Cir. 1995); *see also in re Abercrombie*, 139 F.3d 755, 757 (9th Cir. 1998).  Since the instant case never, according to Debtor's attorney, involved rehabilitation or reorganization but rather orderly liquidation from the outset, the lease payments requested in the instant Request do not serve the purpose of administrative expense priority explained in *Megafoods*.

This Court has broad discretion to grant administrative expense requests, but is required to construe § 503(b) narrowly to keep costs to a minimum and preserve the limited assets of the

8

estate for the benefit of unsecured creditors. *DAK Indus.*, 66 F.3d at 1094; *In re Central Idaho Forest Products*, 317 B.R. 150, 155 (Bankr. D. Idaho 2004).

Applying this burden and construing § 503(b) narrowly, the Court denies the Request as it pertains to Smith individually for failure of his burden of proof. The sole basis stated in the instant Request for administrative expense is the written lease, Smith's and JS Tower's Ex. A.[8] However, the parties to that lease are JS Tower and JS Marketing. While Smith signed the lease as president of both parties he is not a party to the lease in his individual capacity, and he failed to show that the rent arose from a transaction between Smith in his individual capacity and the Debtor-in-Possession. Smith also failed completely to show in the alternative that he gave consideration in his individual capacity to the Debtor-in-Possession in return for rent owed to JS Tower under the lease.[9] Smith also failed to show that he directly and substantially benefitted the estate in his individual capacity under the terms of the written lease. Smith in his individual capacity failed to satisfy his burden for administrative expense priority under *Megafoods*, *DAK Indus.*, and *Overland Express.*

Turning to JS Tower, the Court first acknowledges that for the first 60 days after the date of the filing of the petition, 11 U.S.C. § 365(d)(3) provides that the trustee shall perform all the obligations of the debtor under an unexpired lease of nonresidential real property until such lease is assumed or rejected, notwithstanding § 503(b)(1). *Overland Express*, 20 Mont. B.R. at 151-52. Section 365(d)(3) is interpreted broadly for the purpose of ensuring immediate payment of

---

[8]The lease attached to Proof of Claim No. 28 is not discussed in Smith's and JS Tower's Request as a basis for the requested award, and by its terms that lease expired in 2003.

[9]The Trustee's requests to recover loan repayments and transfers from the Debtor to Smith are not ripe, as they have not been submitted to the Court on a proper procedural manner.

9

lease obligations to protect landlords pending the trustee's decision to assume or reject a lease. *Id.*, 20 Mont. B.R. at 155, quoting *In re LPM Corp.*, 300 F.3d 1134, 1138 (9th Cir. 2002). Thus, claims for post-petition rent arising under § 365(d)(3) are entitled to administrative priority at the full contract rate. *Id.*; *In re Pacific-Atlantic Trading Co.*, 27 F.3d 401, 403-04 (9th Cir. 1994).

In discussing a trustee's requirement to perform obligations under a lease until it is rejected under § 365(d)(3), one bankruptcy court noted a split of authority with the minority of courts requiring that if a debtor does not pay rent as it becomes due the lessor must establish under § 503(b)(1)(A) that the rent is reasonable and necessary to preserve the estate in order to receive administrative expense priority for its claim. *In re Tobago Bay Trading Co.*, 142 B.R. 528, 533 (Bankr. N.D. Ga. 1991). The majority view held that rents which come due during the first 60[10] days of a Chapter 11 case are allowable as administrative expenses without necessity for the prior notice and hearing required by § 503(b)(1), and the court in *Tobago Bay* followed the majority view. *Id.*

The Ninth Circuit followed the majority rule in *LPM Corp.*, 300 F.3d at 1138, holding that claims for post-petition rent arising under § 365(d)(3), pending the trustee's assumption or rejection of the lease, are entitled to administrative expense priority even if those claims exceed the reasonable value of the debtor's actual use of the property or represent repayment of promissory notes included in the lease agreement. *See*, *Overland Express*, 20 Mont. B.R. at 155, quoting *LPM Corp.* and *Pacific-Atlantic Trading Co.*, 27 F.3d at 403-04. Thus by its terms § 365(d)(3) provides for administrative expense priority for 60 days from the petition date, through

---

[10]The amendment to § 365(d)(4) under BAPCPA raised the 60 days under that subsection to 120 days. However, BAPCPA did not correspondingly amend § 365(d)(3) to increase the 60 day period under that subsection to 120 days.

January 28, 2006.  However, Smith testified that the Debtor may have made 1 or 2 lease payments after the date of the filing of the petition.  While Smith later contradicted himself and testified that Ex. B is correct in showing unpaid rent for December 2005 and January 2006, the Court weighs his contradictory statements against JS Tower's claim for administrative expense priority for the 60 days after the petition date under § 365(d)(3).  Given Smith's status as an insider of the Debtor, the Debtor's failure to assume the lease, and Smith's testimony that the Debtor's bookkeeping has several errors, the Court finds that the lease payments were as likely as not made for the 60 day period entitled to administrative expense priority under § 365(d)(3), and concludes that JS Tower failed to satisfy its burden of proof by a preponderance of the evidence for an administrative award under that section.  For the period beyond 60 days, § 365(d)(3) no longer applies and JS Tower's Request must satisfy the burden of proof under the more narrowly construed § 503(b)(1)(A).  *DAK Indus.*, 66 F.3d at 1094; *Central Idaho Forest Products*, 317 B.R. at 155.

Whether the written lease expired or was held over pursuant to its terms, by operation of 11 U.S.C. § 365(d)(4), amended by BAPCPA, an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected if the trustee does not assume or reject the unexpired lease by the earlier of 120 days after the date of the order for relief or date of entry of an order confirming a plan, or after an extension of up to 90 days if requested prior to the expiration of the 120 day period.  § 365(d)(4).  Smith's and JS Tower's Request states that the lease was not assumed, and no plan was confirmed.  Therefore, by operation of § 365(d)(4) the lease was rejected on or about March 30, 2006.

JS Tower's Request states that the Debtor continued to occupy the premises clearly for

11

the benefit of the estate and creditors.  However, no testimony was offered and no exhibits show how the estate and creditors clearly benefitted, and for the Court to infer benefit based on the evidence admitted at hearing, the docket, and the conclusory statement in the Request would be inconsistent with the narrow construction required under § 503(b)(1)(A).  *DAK Indus.*, 66 F.3d at 1094.  JS Tower's lease was not with the Debtor-in-Possession, but rather the preceding entity.  JS Tower's forbearance from enforcing the lease could be viewed as consideration given, but that is undermined by the fact that Smith is an insider, majority shareholder and officer of JS Marketing and failed to take steps to assume the lease before it was rejected.

In re Industrial Distribution Services, Inc., 86 B.R. 718, 720 (Bankr. M.D. Fla. 1988), Judge Alexander L. Paskay wrote:

> Ordinarily, administrative rent claims by insiders would require a close scrutiny and require an inquiry of whether or not the terms of the lease were reasonable and did not represent self-dealings by insiders.  While this approach has been appropriate prior to enactment of the 1984 Amendment dealing with this subject, unless there is a showing made that the insiders are guilty of fraud, courts are not required to consider the claim with special scrutiny in making the allowance as cost of administration for unpaid rent accrued during the sixty day period.

After the 60 day period under § 365(d)(3), special scrutiny and narrow construction of § 503(b)(1)(A) requests for administrative expense priority is required, *DAK Indus.*, 66 F.3d at 1094; *Central Idaho Forest Products*, 317 B.R. at 155, and such scrutiny and construction is even more appropriate in a case, which never contemplated reorganization, involving a request by an insider who is also a major creditor and who the record shows was the recipient of transfers which may be recoverable.  Under the narrow construction of § 503(b)(1)(A), the Court concludes that Smith and JS Tower failed their heavy burden of proof for their Request for payment of rent as an administrative expense.

**IT IS ORDERED** a separate Order shall be entered sustaining the Trustee's objection and denying the Request for Payment of Administrative Expenses filed on October 19, 2007, by Jeff M. Smith and JS Tower Management Services, Inc. (Docket No. 263).

BY THE COURT

*Ralph B/Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana